THE NEW ENGLAND MANUFACTURING COMPANY *v.*
FREDERICK A. VANDYKE, JR., et al.

1. Subscribers to the stock of a manufacturing company put in at a valuation, as assets of the company, a cotton mill, &c., receive the stock of the company therefor, and dispose of the same as their own. The company take possession of the mill, and use it for several years; no conveyance, by deed, is made to them, a mere memorandum of the transaction being made on the journal of the treasurer.

2. *Held,* that when the consideration for the property was received, its former owners became mere trustees of the company, and held the title for the company. Any conveyance made by them subsequent to that transaction, though for a full consideration to a grantee with notice, would be void against the company.

3. A judgment creditor, at best, stands in no better situation than such a grantee.

4. Although books of a company are not evidence against third persons, a memorandum in writing, made by an agent of the parties, and at their request, is evidence for and against them, and for and against all persons claiming under them.

*C. S. Green* and *P. D. Vroom,* for complainants.

*W. Halsted,* for defendants.

THE CHANCELLOR. David S. Brown and William R. Hanson were seized in fee, in their own right, of a certain mill site, together with a cotton mill erected thereon, and the machinery and fixtures necessary for the use of the mill. "The New England Manufacturing Company of South Trenton," was incorporated by an act of the legislature of this state, on the 4th of March, 1842. Their capital stock consisted of one hundred and twenty-eight shares of five hundred dollars each. Brown and Hanson each subscribed for sixty-two shares of the stock, the par value of which was sixty-two thousand dollars. To pay for this stock, they put in, as assets of the company, the said cotton mill, machinery, &c., at the valuation of sixty-two thousand dollars. This was the manner in which the company was organized. Brown

and Hanson took and disposed of the stock as their own. Directors were appointed. The company took possession of the mill and its appurtenances and carried on business for several years. No conveyance by deed was made to the company for the property which represented the stock. A mere entry or memorandum of the transaction was made by the book-keeper in a book of the company called the journal of the treasurer's book, and also in the book of minutes.

On the seventh day of February, 1851, Frederick A. Vandyke, Jr., one of the defendants, recovered a judgment in the Supreme Court against William R. Hanson, the other defendant, and one Albert F. Hanson, for a large sum of money, upon which judgment an execution was issued and placed in the hands of the sheriff with orders to levy upon and sell all the right and interest of Hanson in the said mill and premises. Upon the sheriff's advertising the property under the execution, the complainants exhibited their bill. They pray that Hanson may be decreed to make and execute, and procure to be made and executed to them a deed of conveyance for all his right, title and interest in the said property; that he be restrained from conveying, mortgaging and encumbering it; that Vandyke and the sheriff be restrained from further proceeding under the judgment and execution, and that the complainants may have such other relief as may be necessary.

Vandyke does not stand in a position to defend himself, upon the ground that he is a *bona fide* judgment creditor without notice. It is therefore unnecessary to consider whether such a plea would avail him in this case. He and Hanson have each of them put in an answer to the bill. Both answers admit, substantially, the important facts which must control the decision of the case. It is evident, from their answers, that Vandyke, long before he recovered his judgment, knew of the transaction between Brown, Hanson and the company. He supposed that in pursuance of the understanding between the parties, the property had actually been transferred by deed to the company. Before he recovered his judgment, he filed a bill of complaint in this court, under

oath, in which he alleged that such conveyance had been made. He discovered that he was mistaken as to that fact, and then attempted to reach the property by means of a judgment against Hanson. He now insists he is not chargeable with notice, because the information he had was erroneous. It was that the legal title was in the company, when, in point of fact, it was in Brown and Hanson. The point is, did he know that the company had paid Brown and Hansom a full consideration for this property. It is evident that he did from his own answer. But his counsel insisted in argument that by the stock transaction between Brown, Hanson and the company, the company acquired no interest in the property.

It is shown by the books of the company that Brown and Hanson received one hundred and twenty-four shares of stock between them, and that they received it as the consideration' for the mill and appurtenances. It is objected that the books of the company are not evidence against third persons. Admitting the position in all its extent, the evidence is not admitted as the books of the company. It was a memorandum in writing made by an agent of the parties, and at their request, and in that view, it is evidence for and against them, and for and against all persons claiming under them. Brown and Hanson disposed of their stock and never paid for it in any other way; and the stock thus received by Hanson, Vandyke now holds and claims as his own. The company took possession of the mill, repaired it, and paid the taxes and used it as their own. It was through mere carelessness that the deed was not executed.

When Brown and Hanson received the stock as consideration for the property under the agreement, they became mere trustees of the company and held the title for the company. Any conveyance made by them subsequent to that transaction, though for a full consideration to a grantee with notice, would be void against the company. A judgment creditor, at best, stands in no better situation than such a grantee. Such is the position of the complainant.

The legal title to the property is in Brown and Hanson.

New England Manuf. Co. v. Vandyke et al.

The complainants have a right to call upon them for a conveyance. It is proper that the court should interfere and prevent the further embarrassment of the title by proceedings under the judgment. But a final decree cannot now be made. David S. Brown is a necessary party to the suit. There are many obvious reasons why the court ought not to decree a conveyance by one of these trustees without having the other before it. The reason given by the bill for not bringing Brown in, that Brown is willing to convey, is not sufficient. I cannot take the mere allegation of the complainants for the truth. When brought before the court, Brown may repent of his willingness, and may give good reasons why the complainants should not have the title which is in his co-trustee, until the accounts between them are settled.

The complainants are at liberty to amend their bill, without costs.